Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
280 South Beverly Drive
Beverly Hills, CA 90212
Tel.:     (917) 471-1894
Fax:     (310) 496-3176
Email: astraus@milberg.com

*Attorneys for Plaintiff*
*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALFRED POPE, on behalf of himself, | Case No.: _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| WELLS FARGO BANK, N.A., WELLS FARGO & COMPANY, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff alleges upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of counsel, as follows:

## I.    NATURE OF THE ACTION

1.    Spurred in part by the COVID-19 pandemic, low interest rates allowed American homeowners to refinance their home mortgages at more favorable interest rates from 2019 through present (the "Class Period").

2.    Plaintiff, and members of the putative Class (the "Class"), seek damages for Defendants' -- Wells Fargo Bank, N.A. and Wells Fargo & Company (collectively, "Wells Fargo" or "WF") -- discriminatory practices in denying their applications to refinance their Wells Fargo mortgage loans in violation of the federal Fair Housing and Fair Lending acts, as well as state consumer protection laws.  Indeed, according to recent investigations of Wells Fargo's refinance activity during the Class Period that have been publicized in the media, Wells Fargo approved white applicants' mortgage refinance requests at twice the rate of its approval of Black and Hispanic/Latino minority applicants' refinance requests in numerous areas across the United States.[1] Plaintiff's own analysis of Wells Fargo's mortgage refinance rates bears this out.

3.    This is no accident.  For nearly two decades, Wells Fargo exploited the American dream of home ownership through discriminatory housing practices in violation of the FHA, including by making a disproportionately higher number of subprime and higher cost mortgage loans to minorities than to white borrowers, and then discriminatorily foreclosing on minority mortgage loans in higher minority concentration neighborhoods compared to white neighborhoods.  Such reprehensible conduct has stripped many Wells Fargo minority customers of their single greatest asset – the equity value in their homes.

---

[1] Shawn Donnan, Ann Choi, Hannah Levitt, and Christopher Cannon, "*Wells Fargo Left Black Homeowners Behind in Pandemic Mortgage Refinancing Boom*, Bloomberg (Online) (March 11, 2022), at https://www.bloomberg.com/graphics/2022-wells-fargo-black-home-loan-refinancing/. *See also* J.J. McCorvey and Julia Carpenter, "*Millions of Americans Refinanced Last Year – but Fewer Black and Latino Homeowners Did*," WALL STREET JOURNAL (June 25, 2021), at https://www.wsj.com/articles/millions-of-americans-refinanced-last-yearbut-fewer-black-and-latino-homeowners-did-11624440601.

4.      To add further injury to the insult Wells Fargo's minority customers have already sustained, Wells Fargo is now discriminatorily refusing to refinance minority higher cost mortgages.  Such reprehensible conduct begs the question why any minority would ever bank with this institution.   Indeed, as Wells Fargo's CEO Charles Scharf has publicly acknowledged in Congressional testimony, Wells Fargo engaged in predatory and discriminatory mortgage lending and servicing practices, as well as fraudulent customer account practices.[2]  And, as CEO Scharf further admitted in relatively recent media reports, Wells Fargo has an institutional, discriminatory bias.[3]

5.      Plaintiff and members of the putative Class have suffered harm due to the discriminatory tactics used by the Defendants with respect to their rejections of minority and female homeowners seeking the ability to refinance their mortgages. Due to this conduct, Plaintiff and members of the putative Class bring this Action under federal and state law against the Defendants for damages, injunctive relief, attorney's fees, and any other relief this Court deems just and proper.

## II.      JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

6.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332(d), and 1343, because the Plaintiff asserts federal causes of action, because Plaintiff asserts civil rights causes of action, and because at least one member of the Class is a citizen of a different state than all Defendants, and because the amount in controversy exceeds $5,000,000.

7.      Personal jurisdiction is appropriate over Defendants because Wells Fargo Bank, N.A. transacts business in the State of California and has its principal place of business in San

---

[2] Wells Fargo CEO Charles Scharf admitted these failings in congressional testimony. *See* https://financialservices.house.gov/uploadedfiles/chrg-116hhrg428866.pdf at 9 (last visited Jan. 13, 2022) (testifying that he did not disagree with the Report's findings, and that "the series of behavior that is described should have never happened at the company. The failures that are described a direct result of us not managing the company properly"); *id.* at 5 ("[W]e had a flawed business model in how the company was managed").

[3] *See, e.g.,* https://www.businesswire.com/news/home/20200923005604/en/ (last visited March 19, 2022) (discussing CEO Scharf's unconscious bias); *see also* https://www.charlotteobserver.com/news/business/banking/article246012155.html (Jimmie Paschall, Wells Fargo's head of enterprise diversity and inclusion, revealed: "There definitely is a sense that bias lives vibrantly at Wells Fargo. And I think it is around gender, gender identity, as well as race and ethnicity.)

CLASS ACTION COMPLAINT

3

Francisco, California. Wells Fargo Home Mortgage, Inc. originates loans to California customers from its California offices and maintains a systematic and continuous presence in the State.

8.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because Wells Fargo Bank, N.A. resides in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and Wells Fargo Bank, N.A.'s principal place of business is in this district.

## III.    PARTIES

9.      **Plaintiff.** Plaintiff Alfred Pope is a minority homeowner who owns equity in a home located in Virginia Beach, Virginia. In December of 2021, Plaintiff Pope applied for a Wells Fargo home refinance and his application was denied.

10.     **Defendants.** Defendant Wells Fargo Bank, N.A. is a nationally chartered bank with its principal place of business located in Sioux Falls, South Dakota and is chartered in Wilmington, Delaware.

11.     Defendant Wells Fargo & Company is Defendant Wells Fargo Bank, N.A.'s parent company and is headquartered in San Francisco, California with its principal place of business located in Manhattan, New York, New York.

## IV.    FACTUAL ALLEGATIONS

### A.  Wells Fargo, the Home Mortgage Industry, and Home Mortgage Refinancing

12.     Wells Fargo is one of the Country's largest first and second lien mortgage lenders. Included within that line of business are its new mortgages derived from refinancing existing home mortgages.

13.     Refinancing an existing mortgage allows a borrower to try to obtain better terms including, for example, a lower interest rate.  A lower mortgage interest rate enables a borrower to save hundreds, if not thousands, of dollars per year on interest charges.  As Wells Fargo explains on "Why Refinance a Mortgage" page on its website, refinancing a mortgage enables a borrower:

(1) to tap into home equity (using the equity established in the home in order to get a cash-out refinance where the bank gives the borrower cash in exchange for that equity in order to pay other loans or credit card debt), (2) take advantage of lower [interest] rates (which reduce the monthly payments and the total interest paid out over the duration of the loan), (3) change your loan term (to shorten or lengthen the loan term length), and (4) to convert to an adjustable rate mortgage or a fixed-rate mortgage.[4]

14.    Conversely, the denial of refinance applications means that a mortgage borrower must continue to pay higher mortgage costs.  Brookings Institute senior fellow Andre Perry states that the inability of Black homeowners to refinance their home mortgage loans "means people have less resources to invest in their children, less resources to start businesses, less resources to renovate their homes, less resources to buy additional homes."[5] This, in the aggregate, widens the racial wealth gap in the United States.

**B.  The Pandemic-induced Interest Rates Made Mortgage Refinancing Attractive to Homeowners**

15.    During the Class Period, interest rates dropped substantially due to economic pressures caused by the COVID-19 pandemic – this made refinancing more attractive for mortgage holders.

16.    A study by the Federal Reserve Bank of Boston concluded the following:

a.    The typical refinance during the Class Period reduced borrowers' monthly payments by $279 per month, leading to a total payment reduction of $5.3 billion per year in the United States for all households that refinanced.[6]

---

[4] https://www.wellsfargo.com/mortgage/mortgage-refinance/why-refinance/, (last accessed Mar. 7, 2022).
[5] *Id.*
[6] Larry Bean, "*Fed study: Minority borrowers bore the brunt of COVID-19's impact on the mortgage market*," FEDERAL RESERVE BANK OF BOSTON (June 22, 2021), at https://www.bostonfed.org/news-and-events/news/2021/06/minority-borrowers-bear-brunt-of-covid-19-impact-on-mortgage-market.aspx.

CLASS ACTION COMPLAINT

b.  However, only $198 million, or 3.7% of the total payment reduction of $5.3 billion, went to Black households.[7]

c.  This is especially problematic considering that Black households account for over 13% of the entire United States population and over 9% of all homeowners.[8]

d.  Additionally, the study concluded that white homeowners were approved at twice the rate of Black homeowners with respect to mortgage refinancing during the Class Period.[9]

17.    The study found that, "[c]ompared with white borrowers, Black borrowers on average have lower credit scores and higher loan-to-value ratios [which are] risk factors that can prevent someone from refinancing and reducing their monthly mortgage payments. However, when authors [of the study] control for these factors, they find that before the pandemic, Black and white borrowers were roughly equally likely to refinance. After the pandemic began and interest rates plummeted, Black homeowners were 40% less likely than white homeowners to finance, holding equal the risk factors for both groups."[10]

18.    Critically, the authors of the study concluded, "borrowers who could use the payment reductions the most moving forward may be the least likely to obtain them."[11]

**C.  Due to the Discriminatory Conduct of the Defendants, Plaintiff and the Members of the Putative Class Were Denied Refinancing Opportunities by Defendants' Bank, Wells Fargo**

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

19.     WF has engaged in discriminatory practices that disparately reduce the number of home mortgage refinance requests by minority and female applicants. With respect to minority applicants. these tactics, taken generally, are called "redlining."

20.     The term "redlining" has its roots in New Deal-era racism, which limited minority access to housing opportunities. Historically, the concept of redlining comes "from government maps that outlined areas where Black residents lived and therefore were deemed more risky [real estate] investments."[12]

21.     In the past, redlining took place through the use of mapping where Black neighborhoods were and consisted of coloring those neighborhoods "red" as to denote that they were high risk investments because of the populations that inhabited them. In the modern day, redlining takes place usually though an algorithmic bias which considers multiple factors tied to race (such as ZIP code, education, area code, census track, average home values, and other factors) and uses them in the decision of whether to approve a home mortgage refinancing application.

22.     For example, the refinancing calculator on Wells Fargo's website, utilizes a digitized algorithmic tool that assesses creditworthiness and other factors to offer estimated refinance rates.  The tool asks for inputs for factors that are proxies for minority homeowner status, such as geography (Wells Fargo notes: "[Refinancing] [r]ates can vary by location")[13] and credit score (to which Wells Fargo gives four options: Excellent, Good, Fair, or Poor/Limited).[14]

23.     On its refinance applications, hosted by Blend Labs, Inc., the digitized algorithmic tool (which assesses creditworthiness and other factors to lock in a home mortgage refinance interest rate) also asks for information that can be proxies for race, including "demographic

---

[12] Candace Jackson, "*What is Redlining?*," NYTIMES (ONLINE) (Aug. 17, 2021), at https://www.nytimes.com/2021/08/17/realestate/what-is-redlining.html.

[13] https://www.wellsfargo.com/mortgage/mortgage-refinance/why-refinance/, (last accessed Mar. 7, 2022).

[14] *Id.*

information," employment and income information, real estate holdings by the applicant, and other information.[15]

24.    Wells Fargo's use of these factors has resulted in discrimination by disparately denying minority and female applicants' refinance applications at rates far in excess of denial rates experienced by white borrowers.

**D.  Due to the Discriminatory Conduct of the Defendants, Plaintiff and the Members of the Putative Class Were Harmed**

25.    Plaintiff and members of the putative Class were harmed because they were either denied the ability to refinance their home mortgages entirely due to Wells Fargo's conduct described herein, or they were given less favorable terms than white borrowers who similarly refinanced their home mortgages through Wells Fargo.

26.    Either way, Plaintiff and members of the putative Class were harmed in the form of higher monthly payments on their home mortgage loan payments which could have been reduced but for Wells Fargo's discriminatory conduct.

27.    Indeed, an investigation by Bloomberg News further unveiled Wells Fargo's discriminatory practices with respect to the mortgage refinancing industry.[16] Statistics collected by Bloomberg show how wide Wells Fargo's disparity in refinance approvals was in 2020 compared to all other mortgage lenders in the United States:

---

[15] https://yourmortgageapp.wf.com/section/Getting%20Started/task/BORROWER/3652fd6a-b3e4-4308-bfa8-a92e9f4bbb83, (last accessed Mar. 7, 2022).

[16] Shawn Donnan, Ann Choi, Hannah Levitt, and Christopher Cannon, "*Wells Fargo Left Black Homeowners Behind in Pandemic Mortgage Refinancing Boom*, Bloomberg (Online) (March 11, 2022), at https://www.bloomberg.com/graphics/2022-wells-fargo-black-home-loan-refinancing/.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Disparity by Lender**
Wells Fargo approved fewer than half of Black homeowners' refinancing applications in 2020.



Source: Bloomberg analysis of Home Mortgage Disclosure Act data for 8 million completed applications to refinance conventional loans in 2020.

17

28.    For example, during the time period at issue here, JP Morgan (the largest U.S. bank in terms of assets) approved 81% of mortgage refinance applications from Black homeowners, Rocket Mortgage LLC approved nearly 80% of Black applicants, and Bank of America approved 66% of Black applicants. This is in stark contrast to Wells Fargo's mere 47% approval rate of Black mortgage refinance applications.

29.    Notably, Wells Fargo denied Black mortgage refinance applicants at significantly higher rates than White applicants that had significantly lower incomes:

---

17 *Id.*

**Higher Income, Same Approval**
Wells Fargo's refinancing approval rates were higher for the lowest-income White applicants in 2020 than for all but the highest-income Black applicants.



Source: Bloomberg analysis of Home Mortgage Disclosure Act data for 8 million completed applications to refinance conventional loans in 2020.

30.    According to Kristy Fercho, the Wells Fargo employee responsible for overseeing Wells Fargo's home-lending line of business, lending decisions were "consistent across racial and ethnic groups" and that racial disparity in outcomes for refinancing in 2020 was the result of

1
2

variables that Wells Fargo doesn't control.[18] That provides no excuse because Wells Fargo is not permitted by law to discriminate in its mortgage application process.

3

## V.    CLASS ALLEGATIONS

4
5
6
7
8

31.    Pursuant to F.R.C.P. Rule 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks certification of a class of all first and second lien Wells Fargo minority mortgage refinance applicants from 2019-present (the "Class Period") whose refinancing applications were discriminatorily denied (the "Class".)

9
10

32.    Excluded from the Class are Defendants, their subsidiaries, affiliates, officers, directors, and employees.

11
12
13
14
15
16
17
18

33.    **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes—based upon the publicly-available information discussed herein— that there are tens of thousands of Class members, making joinder impracticable. Those individuals' identities are available through Defendants' records, and Class members may be notified of the pendency of this Action by recognized, Court-approved notice dissemination methods.

19
20
21
22
23
24
25

34.    **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** Defendants have acted in a manner generally applicable to Plaintiff and the other members of the proposed Classes. There is a well-defined community of interest in the questions of law and fact involved, which affect all Class members. The questions of law and fact common to the Classes predominate over the questions that may affect individual Class members, including, *inter alia*:

26
27
28

---

[18] *Id.*

a.  Whether Defendants systematically discriminated against Class members based upon their minority status;

b.  Whether minority Class members' applications to refinance a first or second lien loan were denied where similarly situated non-minority applicants were approved; and,

c.  Whether the algorithms used by Defendants unfairly discriminated against minority Class members and contained algorithmic bias.

35.  **Typicality: Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

36.  **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate class representative because his interests do not conflict with the interests of Class members whom he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this Action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

37.  **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).** The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendants have acted and/or refused to act on grounds generally applicable to the Classes, making final, public injunctive relief or corresponding declaratory relief appropriate.

38.  Injunctive relief, and specifically public injunctive relief, is necessary in this Action.

39.    The harm that Defendants imposes on Consumers causes ripple effects for the public-at-large and Plaintiff seeks injunctive relief forcing Defendants to cease and desist its discriminatory practices.

40.    **Superiority: Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR HOUSING ACT

41.    Plaintiff, on behalf of himself and all others similarly situated, realleges each previous paragraph as if fully alleged herein.

42.    The Fair Housing Act, 42 U.S.C. § 3605(a), prohibits any entity whose business includes engaging in residential real estate-related transactions from discriminating against any person in making available such a transaction on the basis of race.

43.    Defendants' business includes engaging in residential real estate-related transactions.

44.     As set forth above, Defendants maintained a nationwide set of uniform, discriminatory refinancing practices and engages in a pattern or practice of systemic discrimination against Black homeowners that constitutes illegal, intentional discrimination and disparately impacts Black Americans in violation of the Fair Housing Act of 1968.

45.     Plaintiff and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

46.     On behalf of Plaintiff and the putative Class, Plaintiff seeks the relief set forth below.

## COUNT II

### VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT

47.     Plaintiff, on behalf of himself and all others similarly situated, realleges each previous paragraph as if fully alleged herein.

48.     The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, makes it unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race.

49.     As described above, Defendants are creditors because they regularly extend, renew, and continue credit, and Plaintiff was an applicant for credit.

50.     Defendants maintained a nationwide set of uniform, discriminatory mortgage loan origination and underwriting practices and engaged in a pattern or practice of systemic race discrimination against African American mortgage loan applicants that constitutes illegal intentional race discrimination in violation of the Equal Credit Opportunity Act.

51.     Plaintiff and all those similarly situated were subjected to and harmed by Defendant's systemic and individual discrimination.

52.     Defendants' unlawful conduct resulted in considerable harm to Plaintiff and all those similarly situated.

53.     On behalf of himself and the class he seeks to present, Plaintiff requests the relief set forth below.

**COUNT THREE**

**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**

54.     Plaintiff, on behalf of himself and all others similarly situated, realleges each previous paragraph as if fully alleged herein.

55.     California's Unfair Competition Law defines unfair competition to include any "unfair, unlawful, or fraudulent business practice and unfair, deceptive, untrue, or misleading advertising and any act prohibited by Chapter 1 of Part 3 of Division 7 of [California's] Business and Professions Code."

56.     Defendants violated the UCL by engaging in unlawful and unfair business acts and practices.

57.     Defendants are considered "person[s]" as defined by the statute.

58.     Pursuant to the statute, Plaintiff named herein, as well as the putative Class members, have suffered injury-in-fact and have lost money or property because of the unfair competition set forth herein.

59.     In accordance with the liberal application and construction of the UCL, application of the UCL to all Class members is appropriate given that Defendants are headquartered in this District, have a forum selection clause specific to this District, and direct sales/marketing/distribution of Coinbase card accounts to this District.

60.     Unlawful Prong. A business act or practice is unlawful pursuant to the UCL if it violates any other law or regulation.

61.     Defendants' conduct violates the Fair Housing Act and the Equal Credit Opportunity Act, and other applicable statutes which Plaintiffs may add upon amending this Complaint.

62.     Unfairness Prong. A business act or practice is unfair pursuant to the UCL if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

63.     Defendants' unfair acts and practices include, but are not limited to: Plaintiff and the Class are discriminated upon with respect to Defendants' discriminatory denial of Plaintiff's and Class members' refinance applications during the Class Period.

64.     Defendants' conduct described herein caused Plaintiff and members of the putative Class to suffer frustration, anxiety, emotional distress, and financial hardship.

65.     Defendants' business practices are unfair because they offend public policy; they are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious. The injuries caused by this conduct and the harm to consumers outweigh the possible utility from these aforementioned practices.

66.     Plaintiff and members of the putative Class seek all allowable damages under the UCL including injunctive relief ordering Defendants to transact in a timely manner.

VII.    PRAYER FOR RELIEF

67.     WHEREFORE, Plaintiff respectfully requests that this Court find against the Defendants as follows:

a.   Certify this case as a class action;

b.   Designate Plaintiff as a Class Representative and designate Plaintiff's counsel of record as Class Counsel;

c.   Declare that Defendants' acts, conduct, policies and practices are unlawful and violate the Equal Credit Opportunity Act and the Fair Housing Act;

CLASS ACTION COMPLAINT
16

d.   Declare that Wells Fargo engaged in a pattern and practice of racial discrimination against minorities;

e.   Award Plaintiff and all others similarly situated compensatory and punitive damages;

f.   Award Plaintiff and all others similarly situated prejudgment interest and attorneys fees, costs and disbursements, as provided by law;

g.   Award Plaintiff and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiff and all others similarly situated.

h.   Award Plaintiff and all others similarly situated such other relief as this Court deems just and proper.

## VIII.   JURY TRIAL DEMAND

68.   Jury trial demanded by Plaintiffs and members of the putative Class.

DATED:  March __21__, 2021.                Respectfully submitted,

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**

*/s/ Alex R. Straus*
Alex R. Straus, Esq. (SBN 321366)
280 South Beverly Place
Beverly Hills, CA 90212
Tel.:    (917) 471-1894
Fax:    (310) 496-3176
Email: astraus@milberg.com

Jennifer Kraus Czeisler*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E. 50TH Street
New York, New York 10022
Telephone:      212-594-5300
Email:      jczeisler@milberg.com


James Evangelista*
**EVANGELISTA WORLEY**
500 Sugar Mill Rd, Suite 245A
Atlanta, GA 30350
Telephone:      (404) 205-8400
Facsimile:      (404) 205-8391
Email: jim@ewlawllc.com


*Attorneys for Plaintiffs and Putative Class*

*\*Pro Hac Vice Forthcoming*